```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SAMUEL WEBER, on behalf of himself and
all others similarly situated,

                Plaintiffs,

        -against-

COMPUTER CREDIT, INC.,

                Defendant.
----------------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 3 0 2009 ★

BROOKLYN OFFICE

MEMORANDUM, ORDER &
JUDGMENT

09-CV-187 (JBW)

**Jack B. Weinstein, Senior United States District Judge:**

**Contents**

I.   Introduction ........................................................................................................................ 2
II.  Facts .................................................................................................................................... 2
III. Contentions of Parties ......................................................................................................... 4
IV.  Law ..................................................................................................................................... 5
   A. Motion to Dismiss Standard ............................................................................................ 5
   B. Fair Debt Collection Practices Act .................................................................................. 5
      1. Validation Notice .......................................................................................................... 5
      2. Follow-up Communications from Debt Collector ....................................................... 9
V.   Application of Law to Facts ............................................................................................. 11
   A. Adequacy of Letter of August 25, 2008 ........................................................................ 11
   B. No Overshadowing or Contradiction in Letter of September 8, 2008 .......................... 12
   C. Claim of Deceptive Practices ........................................................................................ 15
VI.  Conclusion ........................................................................................................................ 16
Appendix A ............................................................................................................................. 17
Appendix B ............................................................................................................................. 20

1



I. **Introduction**

Plaintiff Samuel Weber filed a complaint on behalf of a class and subclass of similarly situated individuals against Computer Credit, Inc. ("CCI"), claiming violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") by an attempt to collect a modest uncontested charge by a local hospital.

Defendant has moved to dismiss the complaint. The case illustrates abuse *of* creditors through the misuse of a statute designed to protect debtors from abuse *by* creditors. The motion is granted for the reasons stated below.

II. **Facts**

Defendant CCI is a debt collection company licensed by the New York City Department of Consumer Affairs. CCI contracted with Maimonides Medical Center to collect the debts of medical patients. Plaintiff's account, carrying an outstanding balance of $160.34, was referred to CCI for collection by Maimonides.

The factual basis for the claim is contained in two letters sent from CCI to plaintiff, dated August 25, 2008, and September 8, 2008, notifying plaintiff that his account was in default and seeking payment. The initial communication of August 25, 2008 is attached as Appendix A. It reads in relevant part:

> Your overdue balance with Maimonides Medical Center has been referred to Computer Credit, Inc. . . . for collection. *Our records indicate that this debt is your responsibility.* This letter will serve to inform you that your account remains unpaid and we expect resolution of your obligation to the hospital. . . .
>
> This communication is an attempt to collect a debt and any information obtained will be used for that purpose. Unless you notify our office that you dispute the validity of this debt within 30 days of receiving this letter, we will assume that the debt is valid and expect it to be paid.

2

> Pay the amount due to *prevent further collection activity* by Computer Credit, Inc. We appreciate your attention to this matter.

Def. Mot. Dismiss at Ex. B (emphasis added).

Above this text on the front side of the one-page letter, the following statement is provided just below the box indicating the payment amount due: "PLEASE SEE IMPORTANT NOTICE ON BACK." The reverse side of the letter, in print slightly larger than that on the front side, contains a section titled "FEDERAL NOTICE TO ALL CONSUMERS." It provides:

> CCI will assume this debt to be valid unless you dispute the validity of the debt, or any portion thereof, within thirty days after receipt of this notice. If you notify CCI, in writing, within this thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment, as applicable, and a copy of such verification or judgment will be mailed to you. Upon written request within the thirty-day period, CCI will provide you with the name and address of the original creditor if different from the named creditor.

*Id.*

The second CCI letter to plaintiff, dated September 8, 2008, fourteen days after the first letter, indicated that the same amount remained due on plaintiff's account. The letter is attached as Appendix B. It reads in relevant part:

> You have received previous notification from this office regarding your debt to Maimonides Medical Center. Our records indicate that you still have not paid this debt nor have you made satisfactory arrangements to do so.
>
> Computer Credit, Inc. *strongly advises* you to make payment in order to resolve your overdue balance of $160.34. We are a debt collector and *we expect your cooperation.*
>
> This letter is sent to you in an attempt to collect this debt and to serve notice that any information obtained will be used for that purpose.

3

*Id.* (emphasis added).

### III. Contentions of Parties

Plaintiff argues that CCI's communications violate sections 1692g and 1692e(10) of title 15 of the United States Code for a number of reasons. He contends: First, the letter of August 25, 2008 presumed the validity of the debt through its statement "Our records indicate that this debt is your responsibility," which – in conjunction with the failure to provide adequate "transitional language" referring to the validation notice – would cause confusion in the least sophisticated consumer on whether he was permitted to dispute the debt or seek its verification. Am. Compl. ¶¶ 11-13, June 2, 2009, Docket Entry No. 15; *see* 15 U.S.C. § 1692g(a). Second, the letter of September 8, 2008 "overshadowed" and "contradicted" the required validation notice, employed "implicit threatening language," and improperly obscured plaintiff's right to dispute the debt or seek verification thereof within thirty days of receipt of the first letter. Am. Compl. ¶¶ 15-26; 15 *see* U.S.C. § 1692g(a)-(b). Third, the two letters, together, constituted "deceptive practices" in violation of the FDCPA. Am. Compl. ¶ 28; *see* 15 U.S.C. § 1692e(10).

Defendant moved to dismiss the complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). At a hearing on May 28, 2009, the motion was granted, with leave to file an amended complaint.

An Amended Class Action Complaint was filed on June 2, 2009. The motion to dismiss the amended complaint is now decided in defendant's favor.

4

## IV. Law

### A. Motion to Dismiss Standard

In a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendant has the burden of demonstrating "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). Plaintiff's factual allegations are accepted as true, and all reasonable inferences are drawn in plaintiff's favor. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Analysis is confined to "the allegations contained within the four corners of the complaint," *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), though the court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002). "[I]t may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner, Inc.*, 837 F.2d 767, 773 (2d Cir. 1991).

### B. Fair Debt Collection Practices Act

#### 1. *Validation Notice*

5

The FDCPA requires fair notice to debtors of their rights. It states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The debt collector's notice to the debtor, required by section 1692(g)(a), is referred to as the "validation notice." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). The validation notice must inform the recipient that he or she has thirty days after receipt to dispute the debt; if a dispute is made, the debt collector is required to provide verification of the debt. 15 U.S.C. § 1692g(a). "When determining whether § 1692g has been violated, an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is applied." *Russell*, 74 F.3d at 34 (citations omitted). As applied, the law is meant to ensure "the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and [of] debt collectors against liability for bizarre or

6

idiosyncratic interpretations of collection notices." *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993); *see also Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2d Cir. 1998). While the FDCPA protects "the naive and the credulous" against abusive conduct by collection agencies, courts in this circuit have "carefully preserved the concept of reasonableness" in the required validation notice. *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (citing *Clomon*).

A debt collector's written communication to a debtor violates the FDCPA if it is "reasonably susceptible to an inaccurate reading" of the required message or "contains language that *overshadows or contradicts* other language informing a consumer of her rights." *Russell*, 74 F.3d at 34 (emphasis added; internal quotation marks and citation omitted); *see also DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (passage reading that "in the absence of a valid reason for your failure to make payment, pay the above debt or contact the doctor to settle this matter" would "arguably interfere[]" with the required message that the debtor may dispute the debt); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998) (statement that the creditor "insists on immediate payment or a valid reason for [the] failure to make payment" without "transitional language" explaining that this demand did not override the consumer's rights as provided in the required validation notice violates the FDCPA). "A notice is *overshadowing or contradictory* if it would make the least sophisticated consumer uncertain as to her rights." *Russell*, 74 F.3d at 35 (emphasis added). It is a violation for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

7

In *McStay v. I.C. System, Inc.*, 308 F.3d 188 (2d Cir. 2002), the debt collector's letter read in part: "Your delinquent account has been turned over to this collection agency and the balance is due. Please be advised that if after 30 days your account is not paid in full or otherwise closed, the account information will be forwarded to [a credit agency]. This may hinder your ability to obtain credit in the future." *Id.* at 189. The bottom of the page instructed the reader to see the reverse side, which contained the validation notice. The plaintiff claimed that the text on the front of the letter overshadowed the validation notice. Specifically, it was argued that "because a specific date appeared on the front of the letter and because the 'thirty days' language was ambiguous, a debtor could easily be confused as to when her rights would begin and end." *Id.* at 190. The Court of Appeals for the Second Circuit disagreed, holding that "any confusion created by the ambiguity on the front of the letter dissipates *when read in conjunction with* the language on the back." *Id.* at 191.(emphasis added). The court declined to rule that a validation notice must be printed on the front page of a letter to satisfy the FDCPA.

It is assumed that even the least sophisticated consumer will read a debt collection letter in its entirety. *See id.* at 191; *see also Savino*, 164 F.3d at 85 (holding that an FDCPA violation occurs when "the language on the front of the notice, *when read in conjunction with the statutory debt validation on the reverse side*, would 'make the least sophisticated consumer uncertain as to her rights'" and that language referring the debtor to the validation notice is sufficient) (quoting *Russell*, 74 F.3d at 35) (emphasis added)); *Sorey v. Computer Credit, Inc.*, No. 05-CV-6052, 2006 WL 1896401, at *2 (S.D.N.Y. July 7, 2006) (finding no FDCPA violation in a debt collection letter with the validation notice printed on the back and language referring recipient to

8

the notice "in solid capital letters in a slightly different font and surrounded with adequate white space [that was] prominent and easily read").

### 2. *Follow-up Communications from Debt Collector*

Debt collectors will often send additional communications to debtors who have not remitted the requested payment subsequent to the initial letter. Such communications may be sent at any time. The Court of Appeals for the Second Circuit has recognized "the debt collector's right to demand payment, even within the thirty-day period, unless the customer submits a notice of dispute." *Jacobson*, 516 F.3d at 90 n.4. The FDCPA's 2006 amendments made explicit this right of the debt collector to seek payment during this thirty-day period:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. *Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a)* unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

15 U.S.C. § 1692g(b) (emphasis added).

"The thirty-day window is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." *Jacobson*, 516 F.3d at 89. "Only if the demand for payment *obscures the right* to dispute the

9

debt within 30 days is *an issue of 'overshadowing' raised.*" *Day v. Allied Interstate, Inc.*, No. 09-CV-495, 2009 WL 1139474, at *2 (E.D.N.Y. Apr. 27, 2009) (citing *Jacobson*) (emphasis added); *see also Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 416-18 (7th Cir. 2005) ("[N]ot every follow-up letter sent during the validation period must automatically reiterate the safe-harbor validation notice, refer back to that notice, or remind debtors about the validation period and the time remaining in that period."). The FDCPA does not require that follow-up letters "contain the validation notice, including letters that are mailed within the [30-day] validation period." *Spira v. Ashwood Financial Inc.*, 358 F. Supp. 2d 150, 158 (E.D.N.Y. 2005). Nevertheless, the statute is violated if a debt collector's follow-up communication, sent within the validation period, conveys information "in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *DeSantis*, 269 F.3d at 161.

Critical in these multiple letter cases is the question of whether the subsequent letter so "overshadows" a proper validation notice in the earlier letter as to effectively negate its prophylactic effect. The *Russell* case is instructive on this "overshadowing" issue. *Russell*, 74 F.3d 30. The plaintiff sued after receiving two notices from a debt collector. The reverse side of the first notice contained the requisite validation notice. The second notice, sent twenty days later, demanded payment within five days. The court ruled that the follow-up notice violated section 1692g because it "overshadowed" and contradicted the validation notice. The second demand for payment, sent within five days, gave the debtor twenty-five days from the first notice to decide whether to challenge the claim. That was less than the thirty-day period the consumer must be provided to dispute a debt. The court concluded: "No consumer – much less the least sophisticated one – is expected to know that the language on the back of the first notice takes

10

precedence over the second notice when the instructions contained in the two notices are read in combination." *Russell*, 74 F.3d at 36. *See also Savino*, 164 F.3d at 86 (finding violation of the FDCPA when the letter "ask[ed] for *immediate payment* without also explaining that its demand did not override the consumer's rights" provided on the back of the letter) (emphasis added); *Spira*, 358 F. Supp. 2d at 159 (rejecting an overshadowing claim for a follow-up letter that did not "state or imply that payment was due immediately"); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643, 663 (S.D.N.Y. 2006) (analyzing overshadowing claim by assessing "whether the overall tenor of the notice creates an impression of dire urgency that might confuse the least sophisticated consumer about his/her validation rights").

## V.  Application of Law to Facts

### A. Adequacy of Letter of August 25, 2008

The court finds no merit in the claim of an FDCPA violation with respect to the CCI debt collection letter dated August 25, 2008. Consumers are expected to read a debt collection letter in its entirety; no violation exists solely because the validation notice is placed on the back side of the letter. *See McStay*, 308 F.3d at 191; *Sorey*, 2006 WL 1896401, at *2; *Swift v. Maximus, Inc.*, No. 04-CV-216, 2004 WL 1576618, at *3 (E.D.N.Y. July 15, 2004). Only when there is insufficient transitional language or contradictory information in the body of the letter is a claimed violation cognizable. *See Savino*, 164 F.3d at 85; *Day*, 2009 WL 1139474, at *2; *Sorey*, 2006 WL 1896401, at *2; *Swift*, 2004 WL 1576618, at *3. Plaintiff's contention – that CCI's statement that "[o]ur records indicate that this debt is your responsibility" improperly confuses the recipient about the right to dispute the debt – is not credited. A debt collector must inform the debtor of the payment owed. This sentence conveys that fact in simple, straightforward

11

language. The content of the letter, in conjunction with the prominent language directing the reader to the requisite validation notice on the reverse side, satisfies the FDCPA's mandate.

An essentially identical CCI letter was recently challenged in *Grodzian v. Computer Credit, Inc.*, No. 08-CV-2286 (E.D.N.Y.). Though the FDCPA claims pled in the *Grodzian* complaint were permutations of those set forth by this plaintiff, Judge Seybert's analysis is relevant to the determination to be made by this court. In reviewing the language and layout of the CCI letter seeking collection of a debt, Judge Seybert determined that the "least sophisticated consumer would not be confused or misunderstand his right under the Act, and the [CCI] notices are not false or deceptive in any manner." *See* Mem. & Decision at 8, *Grodzian v. Computer Credit, Inc.*, Mar. 31, 2009, Docket Entry No. 13. The contentions that the front and back of the letter were inconsistent and that consumers may not understand their right to dispute the debt were considered and rejected. *Id.* at 7. The instant letter of August 25, 2008 complied with the FDCPA.

## B. No Overshadowing or Contradiction in Letter of September 8, 2008

The second letter, dated September 8, 2008, begins by reminding the plaintiff that he had "received previous notification from this office regarding your debt to Maimonides Medical Center." No explicit reminder or restatement of the validation notice is provided. The letter "strongly advises [plaintiff] to make payment in order to resolve your overdue balance of $160.34," and states: "We are a debt collector and we expect your cooperation."

Plaintiff argues that this language – most significantly the phrase "we expect your cooperation" – overshadowed and contradicted the prior validation notice by employing "implicit threatening language" that would give the "impression" to the least sophisticated

12

consumer that he could no longer dispute the debt and that his only option was to pay the stated balance owed, in violation of section 1692(g)(b). *See* Am. Compl. ¶¶ 15-26.

When statements are contradictory, there is a need for some clarifying transitional language. A passage has in fact been recommended by the Court of Appeals for the Second Circuit with respect to follow-up letters such as the one in the present case. The following passage was offered as a model:

> Although we have requested that you make immediate payment or provide a valid reason for nonpayment, you still have the right to make a written request, within thirty days of your receipt of this notice, for more information about the debt. Your rights are described on the reverse side of this notice.
>
> Our demand for immediate payment does not eliminate your right to dispute this debt within thirty days of receipt of this notice. If you choose to do so, we are required by law to cease our collection efforts until we have mailed that information to you. Your rights are described on the reverse side of this notice.

*Savino*, 164 F.3d at 86. The court of appeals merely suggested that the "inclusion of this or similar language would effectively inform a consumer as to his or her rights under the FDCPA without imposing an undue burden on a debt collector's legitimate efforts to obtain the prompt payment of debts." *Id.* It did not issue a command that its language be used.

In *Durkin v. Equifax Check Services, Inc.*, the Court of Appeals for the Seventh Circuit considered what may cause a second debt collection letter demanding payment during the thirty-day validation period to overshadow or contradict the validation notice in the initial communication. Consistent with the finding of the Court of Appeals for the Second Circuit in *Savino*, the *Durkin* court rejected the plaintiff's argument that a follow-up collection letter must reiterate or refer to the debtor's rights outlined in the validation notice:

13

> [T]here is no need for such a blanket rule. While some follow-up letters may certainly go over the line, in general, not every follow-up letter demanding payment during the validation period overshadows or contradicts a validation notice; thus, *not every follow-up letter sent during the validation period must automatically reiterate the safe-harbor validation notice, refer back to that notice, or remind debtors about the validation period and the time remaining in that period.* Therefore, the mere absence of any such reiterations and reminders in the follow-up collection letters does not alone generate an unacceptable level of confusion. . . . *Rather, the matter turns on whether the specific text contains any impermissible overshadowing or contradiction with respect to the validation notice.*

*Durkin*, 406 F.3d at 417 (internal citation omitted) (emphasis added). *Durkin*'s interpretation of the FDCPA's "overshadowing" provision is particularly instructive.

To overshadow is "to cast a shadow over, to cover or obscure with shadow or darkness," or, alternatively, "to tower over so as to cast [a] shadow over . . . [or] to diminish the apparent eminence or importance of." Oxford English Dictionary 1246 (2d ed. 2002). Analysis of whether a debt collection letter's specific text contains impermissible overshadowing or contradiction under the FDCPA inevitably requires consideration of gray areas.

A second letter, sent by a debt collector inside the thirty-day validation period, stating: "Despite our previous notification, you must pay us immediately" would "cast a shadow" upon and "diminish the apparent eminence or importance" of the validation notice that informs the debtor of the right to dispute the debt. The September 8, 2008 CCI letter's explicit reference to the "previous notification from this office regarding your debt to Maimonides Medical Center" would, by contrast, indicate to even the least sophisticated consumer that the content of that notification, including the validation notice, remains in effect. No language in CCI's follow-up

14

letter overshadows or contradicts the information provided in CCI's initial communication to plaintiff, including the validation notice.

The law must assume that the least sophisticated consumer – even when under financial or other stresses – is not so irresponsible as to throw away a serious letter affecting his or her finances, such as CCI's first communication, instead of saving it for future reference or action. CCI's second communication to the plaintiff does not overshadow, and in fact makes direct reference to, its initial letter to plaintiff, which includes the validation notice.

Defendant could easily have included the suggested *Savino* language in the September 8, 2008 letter to reiterate plaintiff's rights under section 1692g. Nevertheless, the second letter does not demand immediate payment or threaten adverse consequences, and is not overshadowing. *Compare Savino*, 164 F.3d at 85, which stated that the demand for "immediate payment" violated the FDCPA, *with Rumpler v. Phillips & Cohen Assoc., Ltd.*, 219 F. Supp. 2d 251, 259 (E.D.N.Y. 2002), which held that a notice did not violate the FDCPA because there was no demand for immediate payment and no threat of adverse consequences. Defendant's follow-up letter of September 8, 2008 does not violate the FDCPA.

### C. Claim of Deceptive Practices

CCI's debt collection communications pass muster under the FDCPA, adequately informing recipients of the debt owed and their rights with respect to that debt. No deceptive language or practices are found. CCI's two letters do not threaten action against the debtor through deceptive statements or in any other manner that violates the FDCPA.

## VI.     Conclusion

Defendant's motion to dismiss is granted as to all claims. No costs or disbursements are granted.

SO ORDERED.

_____
Jack B. Weinstein
Senior United States District Judge

Dated: June 30, 2009
       Brooklyn, New York